**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BENJAMIN HORTON,

                                         Petitioner,

         v.                                            9:21-CV-262
                                                       (GLS/ATB)

EARL BELL,

                                         Respondent.

BENJAMIN HORTON, Petitioner, pro se
PRISCILLA STEWARD, Assistant Attorney General, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**REPORT-RECOMMENDATION**

       Petitioner, currently incarcerated at Clinton Correctional Facility, filed this petition pursuant to 28 U.S.C. § 2254, challenging a 2016 judgment of conviction in Saratoga County Court, based on his guilty plea to one count of a Criminal Sexual Act in the First Degree. (Petition ("Pet.") at 1) (Dkt. No. 1).[1] This matter has been referred to me for Report and Recommendation by United States Senior District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c)).

       Pursuant to a plea agreement, petitioner was sentenced to serve a twenty-year sentence of imprisonment, to run concurrently with a twenty-five-year sentence from Schenectady County, with twenty years of post-release supervision. (SSR. at 324-28). The Appellate Division, Third Department unanimously affirmed petitioner's

---

[1] Citations to the petition refer to the pagination generated by the court's electronic filing system ("CM/ECF"). Citations to the sealed state court record ("SSR.") and unsealed state record ("USR.") refer to their original pagination.

conviction, and the New York Court of Appeals denied leave to appeal. *People v. Horton*, 173 A.D.3d 1342 (3d Dep't 2019), *lv. denied*, 34 N.Y.3d 932 (2019).

Petitioner raises the following claims for this court's review:

1.  Petitioner was unlawfully interrogated by a child protective services worker without receiving a *Miranda* warning.

2.  The government failed to disclose *Brady* material.

3.  Petitioner received ineffective assistance of counsel.

4.  Petitioner's sentence was illegal and excessive as a matter of law, and the procedure used at the sentencing hearing to determine petitioner's sentence violated his due process rights.

5.  The Saratoga County conviction violated the federal double jeopardy Clause.

6.  The government improperly "brought up his past which was over 23 years old to make this case."

7.  Petitioner was improperly subjected to an unlawful controlled call.

8.  The grand jury indictment evidence was not legally sufficient.

9.  Petitioner was denied his right to appear before the grand jury.

10. Petitioner's guilty plea was constitutionally deficient because the guilty plea was not knowingly, voluntarily, or intelligently entered.

(Pet. at 9-28). Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 12, 13, 14). For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

**DISCUSSION**

I.    **Relevant Facts**

Respondent has included a detailed description of the facts and procedural history of this case.  (Dkt. No. 12-1 at 2-12).  The court will summarize and supplement the facts as necessary for clarity and to discuss the grounds raised by petitioner.

A.    **Schenectady County Prosecution**

On August 24, 2016, petitioner was sentenced to an indeterminate prison term of twenty-five years to life, for two counts of Predatory Sexual Assault after being convicted by a jury in Schenectady County.

B.    **Saratoga County Pretrial Court Proceedings**

In January 2015, petitioner was arrested for crimes alleged to have occurred in Saratoga County on or about April 23, 2015 through April 24, 2015 and in May of 2015.  On December 18, 2015, a Saratoga County grand jury returned a nine-count indictment charging petitioner with multiple counts of Predatory Sexual Assault Against a Child, multiple counts of Predatory Sexual Assault, Sexual Abuse in the First Degree, and Endangering the Welfare of a Child, occurring, on or about, April 23, 2015 through April 24, 2015.  (SSR. 145-47).  The Saratoga County grand jury also charged petitioner with Predatory Sexual Assault Against a Child, Predatory Sexual Assault, and Endangering the Welfare of a Child, occurring, on or about, May of 2015.  (SSR. 148-49).  Petitioner was arraigned on December 22, 2015, where he was represented by

3

public defender Oscar L. Schreiber.  (SSR. 248-55).  At a May 11, 2016 *Huntley*

hearing, Saratoga County Judge James Murphy adopted the April 19, 2016 *Huntley*

hearing ruling from Schenectady County Judge Matthew Sypniewski.  (SSR. 331).  The

ruling suppressed petitioner's oral statements made at the Schenectady police

department to Investigator DeLuca and Detective McCabe as part of the prosecution's

case in chief, but not for cross-examination if the petitioner chose to testify.  (SSR. 331-

32).

## C.    Saratoga County Plea and Sentencing Proceedings

On August 25, 2016, petitioner agreed to plead guilty to the lesser included

offense of Criminal Sexual Act in the First Degree in full satisfaction of the nine-count

indictment.  (SSR. 311-12).  The agreed upon disposition included a twenty year

sentence to run concurrently with petitioner's Schenectady County sentence, and a post-

release supervision period of five to twenty years.  (SSR. 312-13).  At the August 25th

proceeding, petitioner then confirmed to the court that he understood the terms of the

proposed plea agreement, and that he wished to plead guilty.  (SSR. 313).  The plea

agreement also required petitioner to waive his right to appeal, and a written appeal

waiver was signed by petitioner.[2]  (SSR. 140, 312).

---

[2]  In petitioner's motion to reargue his § 440.10 motion, petitioner makes a novel argument that he did not actually sign the waiver of appeal because the waiver's signature is not what his signature ordinarily looks like.  (SSR. 808).  He further argues that even if he did sign the form, the signature is abnormal because of his lack of medication.  (*Id.*).  The trial court denied petitioner's motion to reargue.  (SSR. 811).

During the plea allocution, petitioner acknowledged that he had conferred with his attorney and had sufficient time to go over his decision to plead guilty. (SSR. 313-14). Petitioner confirmed that no one threatened or forced him, in any way, to plead guilty, and that he was pleading guilty freely and voluntarily. (*Id.* at 314-15). He further confirmed that he was not being treated for any "understanding disabilities" and that the medication he was currently taking had "nothing to do with understanding." (*Id.* at 314). Petitioner stated that he understood that by pleading guilty, he was forever giving up his rights to offer any defenses to the charges and the other rights attendant to a jury trial. (*Id.* at 315-16). He also acknowledged that he read, understood, and signed a waiver of right to appeal. (*Id.* at 316).

Petitioner then confirmed that, by pleading guilty to a Criminal Sexual Assault in the First Degree, he was admitting that on or about April 23, 2015 through April 24, 2015, he had oral sexual contact with a person less than thirteen years old while he was over the age of eighteen years old. (SSR. 318-19). The court accepted the petitioner's guilty plea, and adjourned the matter for sentencing. (SSR. 318-20).

Petitioner appeared for sentencing with public defender Oscar L. Schreiber on October 20, 2016. (SSR. 323-30). The government asked the court to impose the agreed upon disposition, and requested post-release supervision for a period of twenty years. (*Id.*). Petitioner, through counsel, argued that a shorter term of post-release supervision was appropriate given petitioner's advanced age upon release. (*Id.* at 327).

Mr. Schreiber further represented that petitioner was remorseful for his actions and looking forward to availing himself of the opportunities and programs in state prison. (*Id.*).  Ultimately, the court imposed the originally contemplated disposition, followed by twenty years of post-release supervision.  (*Id.* at 327-28).

### D.    Direct Appeal

Petitioner filed both a counseled brief (SSR. at 118-32) and a pro se supplemental brief (SSR. at 347-69) on direct appeal to the Third Department Appellate Division.  Petitioner's counseled brief raised the following arguments: (1) the guilty plea was not knowing, voluntary, or intelligent, (2) counsel was ineffective for failing to move to dismiss the Saratoga County charges based on double jeopardy grounds and for failing to discuss petitioner's available defenses on the record, (3) petitioner's sentence was harsh and excessive, and (4) the conviction violated the prohibition against double jeopardy.  (SSR. at 124-30).  Petitioner's pro se supplemental brief raised the following additional arguments: (1) petitioner was entrapped by a child protective services worker into making a statement, (2) he was improperly subject to a police-arranged controlled call from the victim's mother, (3) counsel was ineffective for failing to investigate the case and failing to secure petitioner's testimony before the grand jury, (4) the indictment was facially insufficient, (5) petitioner's plea was not knowing, intelligent, or voluntary, and (6) the conviction violated his double jeopardy rights.  (SSR. 347-69).

On June 13, 2019, the Appellate Division unanimously affirmed the judgment of

6

conviction. *People v. Horton*, 173 A.D.3d 1342 (3d Dep't 2019). On August 22, 2019,

the Court of Appeals denied petitioner's pro se application for leave to appeal. *People*

*v. Horton*, 34 N.Y.3d 932 (2019).

### E.    Postjudgment Motions

On September 20, 2020, petitioner filed a pro se motion pursuant to New York

Criminal Procedure Law ("CPL") § 440.10, asserting that (1) the government violated

their *Brady* disclosure obligations, (2) petitioner was denied his right to testify before

the grand jury, (3) the grand jury proceedings were defective and the evidence was

legally insufficient to sustain the indictment, (4) petitioner's statements to a child

protective services worker were unlawfully obtained and should have been suppressed,

(5) counsel was ineffective in connection with the guilty plea and for other reasons, (6)

the conviction violated his double jeopardy rights, and (7) his guilty plea was not

knowing, voluntary, and intelligent. (SSR. at 584-687).

The Saratoga County trial court denied petitioner's § 440.10 motion on February

5, 2021. (SSR. at 790-97). On March 2, 2021, petitioner's motion to reargue the denial

of the § 440.10 motion was similarly denied. (SSR. at 811).

## II.    <u>Generally Applicable Law</u>

### A.    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

The AEDPA provides that, when a state court has adjudicated the merits of a

petitioner's constitutional claim, a federal court may grant an application for a writ of

habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo.  Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).  Finally, the Supreme Court has held that circuit and district court decisions do not constitute

"clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

## B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

> A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

*Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural

default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "[C]ause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986), *superseded by statute on other grounds*, *United States v. Gonzalez-Largo*, No. 2:07-cr-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

### C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "rests on a state law ground that is independent of the federal question and

adequate to support the judgment." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  This rule applies whether the independent state law ground is substantive or procedural.  *Id*.  When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991), *holding modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted).

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "firmly established and regularly followed," *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-49 (1984)); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so.  *Wainwright v. Sykes*, 433 U.S. at 87.  In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant."  *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

11

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

### III. <u>Analysis of Petitioner's Claims</u>

### A. **Voluntariness of Guilty Plea**

On habeas review, petitioner argues that his guilty plea was not knowing, voluntary, and intelligent. (Pet. at 4). He has cited several different bases on which he contends the court should find in his favor with respect to this issue, some of which were raised in his direct appeal and some in his collateral motions for relief. The court will address each of petitioner's contentions in turn.

### 1. **Challenges on Direct Appeal**

In his direct appeal to the Appellate Division, petitioner raised a challenge to the voluntariness of his guilty plea in his counseled brief on the grounds that petitioner was coerced into making the plea. (SSR. 123-24). In his pro se reply brief to the Appellate Division, petitioner raised a new ground that he was mentally unfit to enter a plea due to a lack of proper medication. (SSR. 430-32). Petitioner not only alleges that these medications affected his ability to comprehend the plea, but also that he informed his

attorney about his lack of proper medication. (SSR. 430-32). The Appellate Division noted the "[d]efendant made no statements during the plea colloquy that cast doubt on his guilt or otherwise called the voluntariness of his plea into question[.]" (USR. 2). They ultimately found that petitioner failed to preserve these claims because he did not file "an appropriate post-allocution motion to withdraw his plea." (USR. at 2).

New York courts "routinely and regularly require defendants to make a motion . . . to withdraw their guilty plea or to vacate the judgment in order to preserve for appeal any claim relating to the validity of the plea itself." *Snitzel v. Murry*, 371 F. Supp. 2d 295, 301 (W.D.N.Y. 2004) (citing cases). It is well settled that the Appellate Division's reliance on this state procedural rule constitutes an "adequate and independent" ground for its decision. *See Hill v. Colvin*, No. 9:16-CV-1301 (MAD), 2018 WL 736013, at *13 (N.D.N.Y. Feb. 6, 2018) (collecting cases). Accordingly, this constitutes a procedural default of petitioner's claims.

As previously discussed, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. Here, petitioner has failed to allege, let alone establish, cause for this procedural default, any resulting prejudice, or a fundamental miscarriage of justice that would occur if this court fails to consider these claims. Accordingly, petitioner's challenges to the voluntariness of his guilty plea as raised in his direct appeal may be dismissed. *See Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *9 (N.D.N.Y. 2015).

13

### 2.    Collateral Challenges

In his CPL § 440.10 motion, petitioner argued that he was mentally unfit to enter a guilty plea because he was not properly medicated.  (SSR. 606-08).  In support of his claim, petitioner provided evidence of various medications that were prescribed to him between December 20, 2018 and March 4, 2019.[3]  (SSR. 609)

In the § 440.10 decision, the trial court first noted that the Appellate Division, on direct appeal, had already ruled upon petitioner's claim that his guilty plea was involuntary, triggering a mandatory bar to reconsideration pursuant to CPL § 440.10(2)(a).  (SSR. 797).  Next, the trial court rejected, on the merits, petitioner's claim that his plea was involuntary, noting that petitioner's claim "that he was 'not on his proper medications'" was contradicted by his statements and other proof contained in the record.  (SSR. at 797).  Specifically, Judge Murphy found that petitioner had a full opportunity to consult with his attorney, and engaged in an extensive plea colloquy with the court, which did not cast doubt upon his guilt or competence.  (*Id.*).  The court relied on petitioner's representation that he understood the nature of the plea agreement, along with petitioner's statement to the court that "he did not suffer from

---

[3] Petitioner provided various psychiatric progress notes from December of 2018 to March of 2019.  (SSR. at 613-16).  As petitioner pled guilty on August 25, 2016, these progress notes do not offer compelling evidence for petitioner's state of mind at the time of plea.  Furthermore, the progress notes do not indicate if petitioner was prescribed these medications during the time he entered the plea or if his ability to comprehend would be impacted by an inability to take the allegedly prescribed medications.

Petitioner also provided medication fact sheets for Vistaril, Lithium, Trilafon, Wellbutrin, and Remeron.  (SSR. 635-39).  These medication fact sheets only generally explain what the medication can be prescribed for, but does not include any information connecting the medication with the petitioner.  (*Id.*).

any illness or impairment from any medication that otherwise would make it difficult to understand the plea proceedings." (*Id.* at 797).

The trial court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent. "The Due Process Clause . . . requires an affirmative showing that a defendant's plea is entered both knowingly and voluntarily before the trial court may accept the plea." *Hill v. Colvin*, 2018 WL 736013, at \*14 (citing *inter alia Godinez v. Moran*, 509 U.S. 389, 400 (1993)). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *De Leon v. United States*, No. 6:18-CR-06094, 2020 WL 3269139, at \*4 (W.D.N.Y. June 17, 2020) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (collecting cases)). "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970) (quotation and footnote omitted)).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [a petitioner's] allocution statements." *Carpenter v. Unger*, Nos. 9:10-CV-1240; 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at \*19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)). In

15

this case, the transcript of the proceeding at which petitioner ultimately pled guilty establishes that the trial court engaged in a lengthy colloquy with petitioner before accepting his guilty plea.  After confirming his desire to accept the government's offer, petitioner was asked a series of questions about the nature of his plea.  (Plea Hearing at 4-9; SSR. at 313-19).  Petitioner confirmed that he was not under the influence of any alcohol, drugs, or other medication that affected his ability to understand the proceedings.  (Plea Hearing at 5; SSR. at 314).  He further testified that he only took medication for "depression and all that.  Anxiety."  (Plea Hearing at 5; SSR. at 314). He also represented that no one had pressured him, coerced him, or made any threats which caused him to enter into the plea.  (Plea Hearing at 5-6; SSR. at 314-15). Petitioner acknowledged that, in pleading guilty, he was forfeiting numerous rights including his right to a jury trial, to confront his accusers, and to testify on his own behalf.  (Plea Hearing at 6-7; SSR. at 315-16).  Petitioner also acknowledged that he read, understood, and signed a written waiver of the right to appeal.  (Plea Hearing at 7; SSR. at 316).  Then, under oath, petitioner pled guilty and stated, "I had oral sexual contact with a person less than 13 years old."  (Plea Hearing at 9-10; SSR. at 318-19). He acknowledged that his plea was made "freely and voluntarily," and that he understood he did not have to plead guilty.  (Plea Hearing at 5-6; SSR. at 314-15).  He also expressed that he was satisfied with the representation of his attorney.  (Plea Hearing at 4-5; SSR. at 313-14).

     Petitioner's sworn testimony directly contradicts his present contention that his guilty plea was not made knowingly and voluntarily.  With respect to his allegations of

'coercion,' petitioner's statements under oath that he was pleading guilty of his own free will, in the absence of any coercion, are afforded a "'strong presumption of verity' . . . and create a 'formidable barrier' to habeas relief." *De Leon v. United States*, 2020 WL 3269139, at *5 (internal citations omitted); *see also Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them[.]") (citations omitted).

The same is true to the extent that petitioner claims his plea was not knowingly entered or understood. As for petitioner's contention that his lack of proper medication impacted his ability to understand the plea proceedings, petitioner has not offered any proof of the same, or that he would have rejected the plea agreement and pursued trial but for his alleged mental status. *Thomas v. New York*, No. 17-CIV-910, 2019 WL 8326684, at *7 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, 2020 WL 1505551 (S.D.N.Y. Mar. 30, 2020); *Royster v. Perez*, No. 08-CV-13, 2009 WL 1505278, at *4 (E.D.N.Y. May 28, 2009) ("[T]he Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen . . . [and] the state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing to the contrary."); *People v. Thomas*, 132 A.D.3d 423, 423 (1st Dep't 2015). *Cf. Harrison v. Thompson*, No. 9:20-CV-705 (MAD/ATB), 2021 WL 1599121, at *6 (N.D.N.Y. Apr. 23, 2021) (guilty plea was not involuntary where petitioner "failed to produce any

17

proof that he was under the influence of drugs during the time of his plea, or that he would have rejected the plea agreement and proceeded to trial had he not been under the influence of marijuana.").

As petitioner's present assertions that his guilty plea was not knowingly and voluntarily entered are "wholly contradicted by the record[,] . . . they are insufficient to entitle petitioner to relief." *Woods v. Superintendent*, No. 9:19-CV-505 (GLS), 2020 WL 3642311, at *9 (N.D.N.Y. July 6, 2020) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Accordingly, petitioner's request for habeas relief on this basis should be denied.

### B.    <u>Grand Jury</u>

Petitioners makes two claims regarding the grand jury: (1) the evidence before the grand jury was legally insufficient to support the indictment and (2) he was denied his right to testify before the grand jury. Petitioner's grand jury claims are not cognizable on habeas review because they are based entirely on New York statutory law. Indictment by a grand jury is a right granted by the New York State Constitution (N.Y. Const. Art. 1, § 6), and there is no corresponding right to a grand jury found in the United States Constitution. *See Branzburg v. Hayes*, 408 U.S. 665, 688, n. 25 (1972) (the right to "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment[.]"); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (noting the Fifth Amendment right to an indictment by a grand jury does not apply to the states as it is not incorporated by the due process clause of the Fourteenth Amendment).

18

Federal habeas corpus relief is not a vehicle for federal courts to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Instead, habeas review is limited to "deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Accordingly, claims based on alleged defects in state grand jury proceedings are not cognizable on habeas review. *See e.g.*, *Rivers v. Costello*, No. 9:08-CV-107 (TJM/RFT), 2011 WL 4592041, at * 9 (N.D.N.Y. Sept. 9, 2011) (petitioner's claim regarding the validity of evidence presented to the grand jury "does not present a federal question and is therefore not cognizable on federal habeas review.") (emphasis in original). Thus, the petition should be denied with respect to this claim.

### C. <u>Sentencing</u>

Petitioner contends that his sentence was "illegal, harsh, and excessive" and an "abuse of discretion by [the] trial court judge." (Pet. at 11). The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Const. Amend. VIII. "In the context of noncapital cases, the Eighth Amendment forbids only extreme sentences which are 'grossly disproportionate' to the crime of conviction . . . [which] is 'applicable only in the exceedingly rare and extreme case.'" *Mendoza v. Miller*, No. 9:04-CV-1270 (LEK), 2008 WL 3211277, at *4 (N.D.N.Y. Aug. 6, 2008) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003)). "Whether [p]etitioner presents his claim as a violation of the Eighth Amendment by it being 'cruel and unusual' or 'harsh and excessive,' the fact remains that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.'" *Brown v. Jones*,

No. 9:18-CV-0815(LEK/CFH), 2021 WL 1294139, at *10 (N.D.N.Y. Apr. 7, 2021) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also Taylor v. Connelly*, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) ("An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law.").

Here, under N.Y. Penal Law § 70.02(3)(a), petitioner was exposed to a maximum of twenty-five years imprisonment for his conviction by guilty plea to a Criminal Sexual Act in the First Degree.  Ultimately, the court sentenced petitioner to a term of twenty years of imprisonment, which "is within the range prescribed by [the Penal Law]." *White*, 969 F.2d at 1383.  Since the sentence imposed was plainly within the statutory limits, and, thus, was also not grossly disproportionate to the crime, petitioner is not entitled to habeas relief on this basis.

### D.  Ineffective Assistance of Counsel

Petitioner raises several bases on which he contends habeas relief is warranted due to the ineffective assistance of trial counsel.  (Pet. at 17-18, Traverse at 19-24).  In his direct appeal, petitioner raised such claims against counsel for failing to seek dismissal of the indictment on double jeopardy grounds and failing to discuss petitioner's available defenses on the record.  (SSR. at 125-27).  In response to those claims raised by petitioner in his direct appeal, the Appellate Division held that petitioner's ineffective assistance of counsel claims relating to the voluntariness of his guilty plea were unpreserved for review, in the absence of a post-allocution motion by petitioner seeking to withdraw his guilty plea on those grounds.  (USR. at 3).  To the

extent petitioner raised other ineffective assistance counsel claims on direct appeal, the Appellate Division found these claims to be "barred by [petitioner's] guilty plea." (U.S.R. at 3).

In his CPL § 440.10 motion, petitioner asserted defense counsel (1) failed to facilitate his testimony before the grand jury; (2) failed to investigate the victim's history of psychiatric treatment, and use of "mind altering medication" that could affect the credibility of the witness; (3) failed to move for dismissal based on a 2013 criminal case that was dismissed in favor of petitioner; and (4) failed to learn petitioner was not receiving his bipolar medication while awaiting trial in jail. (SSR. 605-07). Upon review, the trial court denied petitioner's motion procedurally and on the merits. (SSR. at 796). Procedurally, the claims were subject to the mandatory procedural bar of CPL § 440.10(2)(a) because they were raised and determined on direct appeal, except to the extent the claims affected the knowing, intelligent, and voluntary nature of his guilty plea. (SSR. 796).

The trial court also held that these claims were "subject to a discretionary bar under CPL § 440.10(3)(b), because the [c]ourt addressed them at the . . . *Huntley* hearing, and allowed defendant and counsel the opportunity to discuss the claims before defendant withdrew them. (*Id.*). When considering petitioner's claims on their merits, the trial court found "nothing in the plea colloquy or record provided . . . lends support to [petitioner's] claims that he received ineffective assistance" and that "the record confirm[ed] the voluntariness of this very advantageous plea." (*Id.*). The trial court also found the record "indicate[d] defendant's expressed and unequivocal

satisfaction with counsel's representation." (*Id.*).

The relevant federal law governing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.* First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth amendment." *Hudson v. New York*, No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington*, 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume,

absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of a habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)).

### 1.  Claims Barred by Guilty Plea

For the following reasons, this court finds that petitioner's ineffective-assistance-of-counsel claims are procedurally barred or they otherwise do not support habeas relief. To begin, it is well-established that a voluntary guilty plea that is knowingly, intelligently, and voluntarily entered constitutes a waiver of non-jurisdictional defects occurring prior to entry of the plea. *Rodriguez v. New York State Dep't of Parole*, No. 9:18-CV-0928 (GLS/ML), 2021 WL 3888256, at *5 (N.D.N.Y. July 30, 2021) (citing

23

*United States ex rel. Glenn v. McMann*, 349 F.2d 1018, 1019 (2d Cir. 1967)).  As the Supreme Court has explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In this case, petitioner's guilty plea effectively waived all ineffective-assistance-of-counsel claims relating to events prior to entry of the plea.  *See United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith*, No. 9:13-CV-1441 (GLS/RFT), 2015 WL 13745077, at *5 (N.D.N.Y. July 29, 2015), *report and recommendation adopted*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016).  Thus, petitioner's arguments that defense counsel should have moved to dismiss the indictment against petitioner, failed to secure petitioner's testimony before the grand jury, failed to discuss petitioner's available defenses on the record, and failed to properly investigate the case, are all precluded from habeas review.

### 2.    Claims Related to Voluntariness of Guilty Plea

The Second Circuit has "recognized that failure to move to withdraw a guilty plea or move to vacate a judgement of conviction constitutes an independent and adequate state procedural rule barring federal habeas review" of ineffective assistance of counsel claims concerning the voluntariness of the plea.  *Irvis v. Haggat*, No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *9 (N.D.N.Y. 2015).  Accordingly, petitioner's ineffective-assistance-of-counsel claims related to the voluntariness of his

guilty plea are procedurally defaulted.

### 3.    Review of the Merits

To begin, petitioner's habeas claims regarding counsel's representation are particularly suspect, to the extent that petitioner informed the court during the plea that he was satisfied with counsel's representation. (Plea Hearing at 5; SSR. at 12-13). Petitioner faced the possibility of multiple life sentences, but counsel was able to secure a twenty year sentence that ran concurrently to petitioner's sentence in Schenectady County. (Penal Law §§ 70.00, 130.96; SSR. at 311-13). Furthermore, counsel engaged in appropriate motion practice, effectively cross-examined the People's suppression hearing witness, secured the suppression of petitioner's statement to police, and made a cogent argument for the suppression of his statements to CPS. (SSR. 259-309). Petitioner has also failed to establish that his attorney's advice and representation reflected anything other than a strategic attempt to reduce petitioner's sentence. *See United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021) (quoting *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009)) ("Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel.").

Even if the court were to find that the performance of petitioner's counsel fell below an objective standard of reasonableness, petitioner's claims would still fail as he has not demonstrated the "prejudice" required by the second prong of the *Strickland* test. In other words, he has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial." *See Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)

(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted).

Moreover, the petitioner "must convince the court that a decision to reject the plea

bargain would have been rational under the circumstances." *United States v. Kimber*,

777 F.3d 553, 563 n.1 (2d Cir. 2015) (internal quotation marks omitted).

A petitioner's "conclusory, self-serving statement that, but for counsel's alleged

ineffectiveness, he would have gone to trial, does not by itself establish prejudice under

*Strickland*." *Linares v. Smith*, No. 15-CV-5442, 2020 WL 3545119, at *6 (E.D.N.Y.

June 30, 2020) (citing *Calderon v. United States*, 953 F. Supp. 2d 379, 385 (E.D.N.Y.

2013)).  Thus, petitioner's conclusory assertion that he would have gone to trial but-for

counsel's conduct is insufficient to establish prejudice under *Strickland*.

### E.    Other Claims Barred by Appellate Waiver/Guilty Plea

Petitioner's remaining claims include that:  (1) he was unlawfully interrogated by

a child protective services worker without being advised of his *Miranda* rights; (2) the

government violated their *Brady* obligations; (3) the government improperly discussed

petitioner's past conduct; (4) petitioner was improperly subjected to a controlled call

during the investigation of the case; and (5) the conviction subjected him to double

jeopardy.  For the reasons discussed below, petitioner's remaining claims are barred by

his written waiver of appeal and/or his guilty plea.

"[A] guilty plea represents a break in the chain of events which has preceded it in

the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  "A defendant

who pleads guilty unconditionally while represented by counsel may not assert

independent claims relating to events occurring prior to the entry of the guilty plea.
'He may only attack the voluntary and intelligent character of the guilty plea by
showing that the advice he received from counsel was not within [acceptable]
standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996) (quoting *Tollett v.
Henderson*, 411 U.S. at 267).

A defendant may execute an appellate waiver as a plea condition, which
generally precludes both direct and collateral review. *United States v. Pipitone*, 67
F.3d 34, 39 (2d Cir. 1995); *Pollack v. Hobbs*, 98 F. Supp. 2d 287, 291 (E.D.N.Y.
2000), *aff'd.*, 8 F. App'x. 37, 2001 WL 388061 (2d Cir. 2001).  The waiver is valid if
executed voluntarily and intelligently, and with the advice of counsel, and the sentence
is within the agreed-upon range. *Bello v. People*, 886 F. Supp. 1048, 1054 (W.D.N.Y.
1995).  The Appellate Division found petitioner's appellate waiver was knowingly,
intelligently, and voluntarily made. (USR. 2).  At the plea, petitioner affirmed that he
understood that he was waiving his right to appeal, that the right to appeal was a
separate and distinct right from all of his other rights, and that he signed the waiver
voluntarily, knowingly, and of his own free will.  Therefore, petitioner's waiver of his
right to appeal was constitutional and it precludes review of petitioner's remaining
claims.

Thus, petitioner's remaining claims are all barred by his guilty plea and appellate
waiver.[4] *Hayes v. Inserra*, 11 Civ. 1365, 2014 U.S. Dist. LEXIS 184858, at *54-47

---

[4] The *Lefkowitz* exception to the *Tollett* rule does not apply because petitioner pled guilty before
the court ruled on his suppression motion. *Latham v. Harris*, 78 Civ. 5067, 1979 U.S. Dist. LEXIS
10903, at *8-9 (S.D.N.Y. July 19, 1979).

(S.D.N.Y. Mar. 18, 2014) (citing cases) (finding "*Brady* claim[s] that concern allegedly undisclosed impeachment material" are waived by a guilty plea); *Bridgefourth v. Artus*, 475 F. Supp. 2d 261, 269 (W.D.N.Y. 2007) (finding a *Miranda* allegation regarding conduct antecedent to the guilty plea is waived); *Padilla v. Bradt*, No. 13-CV-7908, 2015 WL 394090, at *8 (S.D.N.Y. Jan. 29, 2015) (holding defective indictment claims fall under the *Tollet* rule that a petitioner may only attack the voluntary and intelligent character of the plea); *United States v. Leyland*, 277 F.3d 628, 632 (2d Cir. 2002) (holding that "[t]o preserve his [double jeopardy] claims, [petitioner] needed to raise his double jeopardy argument before pleading guilty").

### F.   **Motion to Stay**

On March 8, 2023, while his petition for habeas relief was still pending review, petitioner submitted to this court a "notice" that he is filing a § 440 motion with Saratoga County Court "[t]o have evidence and new evidence . . . be on the Record . . . and to try to get a new judgment or vacate this case on the facts that there is not any legal evidence for a conviction and . . . [petitioner] had disabilit[ies] that made him unable to comprehend and make any judgment[s.]"  (Dkt. No. 71).

To the extent petitioner intended the notice to serve as a motion for a stay, such a motion would be denied because its format does not comply with the local rules.  *See* N.D.N.Y.L.R. 7.1(b).  Therefore, liberally construing petitioner's letter, petitioner is seeking permission to file a motion for a stay.

However, petitioner's request is denied because even if he files a properly formatted motion, it would be unsuccessful.  When a district court is presented with a

"mixed petition" containing both exhausted and unexhausted claims, it may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). This "stay and abeyance" procedure should be "available only in limited circumstances" where the petitioner can show both (1) "good cause" for failing to "exhaust his claims first in state court" and (2) that his unexhausted claims are not "plainly meritless." *Id.* at 277.

The petition presently before this court contains only exhausted claims. To the extent any of the claims in petitioner's most recent § 440 motion are new, petitioner has not presented this court with a sufficient basis for granting a stay. *See Hall v. Woods*, No. 7:07-CV-9264, 2012 WL 2864505, at *5 (S.D.N.Y. July 12, 2012) ("Since Hall's petition currently contains only exhausted claims, the Court cannot treat his petition as 'mixed' for purposes of considering a stay under *Rhines*. Hall's request for a stay is therefore premature. In order to assert his new . . . unexhausted claim, Hall must move to amend his petition[.]") (citations omitted); *Spells v. Lee*, No. 1:11-CV-1680, 2011 WL 2532907, at *1 (E.D.N.Y. June 23, 2011) (concluding that petitioner's motion to stay was "premature" because his "petition contain[ed] only exhausted claims" and he had not yet filed a motion to amend the petition to add the unexhausted claim); *Mills v. Girdich*, No. 1:03-CV-0341, 2008 WL 4371362, at *1 (W.D.N.Y. Sept. 17, 2008).

Accordingly, to the extent petitioner wishes to include the claims raised in his most recent § 440 motion in his pending petition, he cannot do so through a motion to stay. Instead, he would need to move to amend his petition. However, a motion to

29

amend filed prior to the exhaustion of petitioner's state court remedies would also be denied as futile. *See Simpson v. Yelich*, No. 9:18-CV-0417 (GTS/TWD), 2018 WL 4153928, at *3 (N.D.N.Y. Aug. 30, 2018) (citations omitted) (denying motion to amend a petition to add an admittedly unexhausted claim as futile). Therefore, even if petitioner had presented a proper motion to amend, it would be denied as futile.

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

      **RECOMMENDED**, that a certificate of appealability be **DENIED**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  March 30, 2023

Andrew T. Baxter
U.S. Magistrate Judge